ELLINGHOUSE ET AL., RESPONDENT, *v.* TAYLOR,

APPELLANT.

[Submitted April 2, 1897.   Decided April 26, 1897.]

*Constitution— Construction—Eminent Domain—Right of Way*
*for Ditches.*

CONSTITUTION—*Construction.*—Section 15, article 3 of the constitution provides that
"the use of all waters that are now appropriated or may hereafter be appropriated
for sale, rental, distribution or other beneficial use, and the right of way over the
lands of others for all ditches ———— necessarily used therewith shall be held to be
a public use." *Held,* that the phrase "other beneficial use" includes other uses than
such as are kindred to rental, sale or distribution.

SAME.—The use of water to cultivate a particular tract of land, is a public use, under
section 15, article 3 of the constitution.

SAME—*Eminent Domain—Right of Way for Ditch.*—The law of March 6, 1891, which
authorizes a proceeding to condemn a right of way over the lands of another for a
ditch to be used for irrigating purposes, is not unconstitutional.

EMINENT DOMAIN—*Trespasser.*—The mere fact that plaintiffs had been trespassers
upon defendant's land, does not deprive them of the right to condemn a right of way
for a public use.

*Appeal from District Court, Madison County.   Frank*
*Showers, Judge.*

PROCEEDING by Frederick Ellinghouse and Elijah D. Marsh
to condemn right of way for an irrigating ditch across the
lands of Thomas T. Taylor.   From a decree establishing such
right of way, defendant appeals.   Affirmed.

Statement of the case by the justice delivering the opinion.

Respondents (plaintiffs below) instituted a proceeding under
the act of the state legislature approved March 6, 1891, for
the purpose of condemning a right of way for an irrigating
ditch across the land of appellant (defendant below).

The complaint averred the interest of plaintiffs in certain
described lands, the appropriation of the water to be conveyed
for the irrigation thereof, the necessity of the right of way
for a ditch across defendant's land, and a failure on defend-
ant's part to enter into an agreement as to the same.   A de-
murrer to the complaint for failure to state a cause of action,

and for want of jurisdiction on the part of the court to enter-
tain it because of the unconstitutionality of the law of 1891,
was interposed and overruled.

The answer filed denied most of the material allegations of
the complaint, pleaded the unconstitutionality of the statute
of 1891, and set forth affirmatively that defendant's land
would be seriously injured by the granting of the right of
way; that the plaintiffs could convey water to their land with-
out a ditch through defendant's land; and that the condemna-
tion proceeding was not in good faith, but for the purpose of
harassing defendant.

The replication denied the affirmative matter set forth in the
answer.   A trial was had, and the court, on the evidence,
made an order granting the right of way, and appointing com-
missioners to assess damages.   Upon the report of the com-
missioners filed, after denying a motion to set aside their find-
ings, the court entered a decree in behalf of plaintiffs.   The
appeal is from the decree and the several orders incidental
thereto.   The record contains none of the evidence intro-
duced.

*W. A. Clark*, for Appellant.

*Lew L. Callaway*, for Respondents.

BUCK, J.—Appellant's counsel states the main points he re-
lies upon for a reversal of the judgment of the lower court
substantially as follows:

"First. That the complaint failed to state facts sufficient to
give jurisdiction, for the reason that it shows upon its face
the right sought to be acquired is not a public use.

"Second. That the law of 1891 is unconstitutional, inasmuch
as it permits a right of way for private use.

"Third. That the right to take private property for private
use in the case of appropriations of water is not authorized by
section 15, article 3 of the constitution of the state of Mon-
tana, providing that the use of all waters that are now ap-
propriated, or may hereafter be appropriated, for sale,

rental, distribution, or other beneficial use, and the right of way over the lands of others for all ditches, drains, flumes, canals and aqueducts necessarily used in connection therewith, shall be held to be a public use. The term 'other beneficial use' makes it apply only to uses kindred to sale, rental or distribution; that is to say, the beneficial use must be something kindred to rental, sale or distribution, and applies to the appropriation and use of large quantities of water for public purposes, or, to supply a large number of individuals,  *  * * but does not apply to appropriations and uses by private individuals for distinctly private purposes. That the scope of this section of the constitution is limited, rather than extended by the words 'other beneficial uses.' "

We cannot agree with this construction of section 15, article 3 of the constitution of Montana. The phrase "other beneficial use" clearly includes in the term "public use" the use of water for the purpose of irrigating a particular tract of agricultural land, or working a particular mine, as well as the use of water for irrigating a number of tracts of land, or working a number of mines owned by different persons. In California, whose constitutional provision on the subject of the use of water, it is insisted by appellant, is substantially the same as that of Montana, a much narrower interpretation of the term "public use" has been adhered to than we can agree with. In *Lorenz* v. *Jacob*, 63 Cal. 73, the supreme court of California held that: "The right of eminent domain is restricted to the taking of private property for public use. It cannot be exercised in favor of the the owners of mining claims, to enable them to obtain water for their own use in working such claims, though the intention may also be to supply water to others for mining and irrigating purposes."

And yet in the state of California no constitutional objection is urged against the construction of ditches and condemnation of rights of way therefor in order to distribute water to a number of owners of agricultural or mining lands. What real distinction is there, so far as the term "public use" is concerned, between the benefit that results to a state from the re-

clamation by artificial irrigation of 160 acres of agricultural land owned by one or two persons, and the reclamation by the same means of thousands of acres owned by many different persons living together in one subdivision of the state? We do not think there is any in principle.    The reclamation of one small field by means of artificial irrigation promotes the development and adds to the taxable wealth of the state as well as the reclamation by the same means of a number of fields. The only difference is the extent of the benefit.

The constitutional provision of California, however, is not the same as that of Montana on the subject of the use of water. The former does not contain the phrase "other beneficial use." But, even if this phrase were not included in the Montana provision, we should not feel disposed to follow the California construction.    It impresses us as narrow and retrogressive. Under this language in the constitution of each state, namely, "the appropriation of water for distribution," we think the courts of either state would be justified in declaring the use of water for one or two tracts of land or mines a "public use."

The term "public use," under the later and better line of authorities, is not limited to cases wherein persons or incorporated aggregations of persons, in consideration of the right of eminent domain conferred upon them by the state, have bound themselves to the direct discharge of a duty to the people at large, and from and in the discharge of which the people, individually and collectively, derive a direct benefit, and are directly interested; as, for instance, the reciprocal obligation incurred by common carriers in return for the right to engage in their business to transport passengers and freight without discrimination.    A "public use" is far broader in scope. Persons have been allowed the right of eminent domain on the theory of a public use, in the construction of dams for the operation of grist and saw mills, in the reclamation of swamp lands, and in other similar instances that might be enumerated where the public had no direct interest in these operations, whose main end was mere private gain, and where the benefit to the people at large could result indirectly and incidentally

only from the increase of wealth and the development of natural resources.

The whole subject is very ably treated, and the pertinent authorities carefully collated, by Chief Justice Gooding in the case of *Oury* v. *Goodwin* (Ariz.) 26 Pac. 376.    It is also discussed by Mr. Justice Hunt in the case of *Butte, Anaconda & Pacific Railway Co.* v. *Montana Union Railway Co.*, 16 Mont. 504, 41 Pac. 232.

In the last mentioned decision the conclusion we have reached in the premises is clearly foreshadowed.    Hence we deem it unnecessary to go more fully into the subject.    The public policy of the territory and the state of Montana has always been to encourage in every way the development of the minerals contained in its mountains, and the necessity for adding to its tilled acreage is manifest.    This state is an arid country, and water is essential to the proper tillage of its scattered agricultural valleys.    With all this in view, it was expressly declared in our state's constitution that the use of water by private individuals for the purpose of irrigating their lands should be a public use.    The statute of 1891 regulating the manner in which rights of way for irrigating ditches should be acquired was enacted under the constitution in order to carry out the intention of its framers and the people who adopted it.    Reference to the United States supreme court decisions cited in the cases *supra* will also prove that the constitution and the law of Montana do not violate the constitution of the United States.    See, also, *Irrigation District* v. *Braaley* (Nov. 16, 1896), 17 Sup. Ct. 63.

The complaint alleges that the ditch for which a right of way was prayed had been originally constructed by plaintiffs in ignorance that a right of way was necessary, and that defendant, with knowledge of its construction, had made no objection at the time.    The answer denies that it was so constructed.    The appellant insists that, inasmuch as the complaint shows on its face that plaintiffs were originally trespassers upon his ground, for that reason also they were not entitled to a decree for a right of way.

· If appellant sustained damage by reason of any trespass on his ground by plaintiffs, he has a remedy.     But plaintiffs, by reason of an inadvertent trespass, should not be debarred from obtaining what the law entitles them to receive.

It is objected that the court and the commissioners appointed failed to find that the right of way sought to be acquired by plaintiffs was for a public use. The facts set forth in the complaint clearly show that such use was a public use within the purview of the constitution.     Such a finding was unnecessary.

Other objections are made, but, as they involve a consideration of the evidence, which is not in the record, we cannot consider them.     The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT., J., concur.

