JOHN J. GREINER, Appellant, v. THE OGDEN STREET RAILWAY COMPANY, THE OGDEN ELECTRIC RAILWAY COMPANY, CORPORATIONS, AND ROLAND R. CONKLIN, Respondents.

ACTIONS IN PERSONAM — NON-RESIDENT DEFENDANT — HOW SERVED WITH PROCESS.

> Where the Defendant, a natural person, is a non-resident, and the action is for a money demand and not *in rem*, he must, in the absence of voluntary appearance, be brought into court by personal service before a judgment *in personam* can be entered against him.

(Decided March 5, 1900.)

Appeal from the Second District Court, Weber County, Hon. H. H. Rolapp, *Judge.*

Action to recover damages for the death of plaintiff's infant son alleged to have been killed by a car of the street railway, operated by defendants, and through their negligence. From a judgment for defendants, plaintiff appealed. *Affirmed.*

*A. J. Weber, Esq.*, for appellant.

We assert it as a legal proposition that under the law an individual can not operate a railroad — nor a street car system. Roland R. Conklin can not remain in New York and operate a street car system in Utah. He must have been operating it in trust for or under the name of the Ogden Electric Railway Company. It may be insisted that Conklin had no agent in Utah on whom service of process could be had. The proof shows that Flygare was in charge of the street car system as superintendent.

The law is that:

" If the corporation has not complied with the statutory requirements, service upon a person who acts as its agent within the state is sufficient, for it will not be allowed to take advantage of its own illegal conduct to escape service of process." Reno on Non-Residents, Sec. 46; *Hagerman* v. *Empire Slate Co.*, 97 Pa. St., 574.

We insist that Conklin, the individual who purchased at the so-called foreclosure sale, is and should be looked upon and dealt with as the reorganized corporation. *Commonwealth* v. *Central Pass Ry.*, 52 Pa. St., 506.

*Messrs. Zane and Rogers*, for respondent companies.

These respondents, the railway companies, did not owe any duty to appellant's child, therefore they can not be held liable in an action for negligently killing him. 1 Shear. and Red. on. Neg., Sec. 15.

*Lindsay R. Rogers, Esq., Wm. D. Riter, Esq.,* and *Edmund G. Vaughan, Esq.,* of counsel, for respondent, *Roland R. Conklin.*

Subject to the constitutional provision that no State shall deprive any person of life, liberty, or property without due process of law, any State has the right and power to subject the property of non-residents within its territorial limits to the satisfaction of the claims of its citizens by any mode of procedure which it may deem proper and convenient. *Galpin* v. *Page,* 18 Wall., 350; *Mackey* v. *Gordon,* 34 N. J. L., 291; *Ins. Co.* v. *Pinner,* 43 N. J. Eq., 52; *Thomas* v. *Mahone,* 9 Bush (Ky.), 111; *Nat. Bank* v. *Peabody,* 55 Vt., 492.

The leading case in the United States upon the question of jurisdiction of a court over the person of a defendant is, *Pennoyer* v. *Neff,* 95 U. S., 714; *Eliot* v. *McCormick,* 144 Mass., 10; *York* v. *Texas,* 73 Texas, 651; *Eastman* v. *Dearborn,* 63 N. H., 364.

The Statutes of Utah not providing for the service of summons upon a natural person, by delivering a copy to some other person, designated as an "agent," therefore there was not in this action any citation whatever to Mr. Conklin, and the court did not acquire jurisdiction over his person, and the judgment rendered against him was void. *St. Clair* v. *Cox,* 106 U. S., 350 (353).

BARTCH, C. J.

This action was brought to recover damages for the death of appellant's infant son, aged four years, who, it is alleged, was killed by a street railway car being run over him, in Ogden, Utah, on March 12, 1897, through the negligence of the defendants. It appears the complaint was first filed on May 8, 1897, and on April 1,

1898, an amended complaint was filed. Summons was served on the agent of the defendant corporations, but no personal service was made on defendant Conklin. There was, however, a copy of the summons delivered to one who was reputed to be his managing agent in charge of his property. The amended complaint, among other things, charged that, at the time of the accident, the defendant, Conklin, was the legal owner and holder of the street car system of the defendant corporations; that he held the same in trust for them and for him, and was in the actual possession and control of the property and operating the same for the defendants; and that the child was killed through the negligence of the defendants in operating one of their cars.

From the evidence it appears that long prior to the killing of the child, the street railway, in question, was the property of the defendant, Ogden City Street Railway Company; that the property was sold, under foreclosure proceedings, in 1896, to defendant Conklin; that thereupon Conklin became the owner, took possession of and operated the property in his own name, and was so operating it on March 12, 1897, the day on which the fatal accident occurred. Conklin continued to so operate the property until April, 1897, when it was transferred to the defendant, Ogden Electric Railway Company, which company was organized and commenced operations about that time.

At the trial, on June 27, 1898, on motion of counsel for the defendants, the court instructed the jury to return a verdict "no cause of action," as to the defendant corporations. The jury then returned a verdict in the sum of $3,000 against defendant Conklin, his default having been entered on the same day. Thereafter judgment was entered accordingly. On motion of counsel for defendant

21 Utah—11.

Conklin, the judgment, on December 20, 1898, was set aside and the return of summons quashed as to him. The action of the court in the premises has been challenged by appeal.

A number of errors have been assigned, but none of them appear to have merit. It is too clear for argument that, under the evidence disclosed by the record, neither of the defendant corporations can be held liable for any negligence in the operation of the street railway system on the 12th of March, 1897, when the child was killed, because neither of the companies, as is shown, had, or exercised, at that time, any ownership or control over the property. Whether or not there was actionable negligence, and whether or not Conklin could be held liable therefor, before a tribunal having jurisdiction of his person as well as of the subject-matter of the suit, are questions which it is not necessary to decide. It is evident that, where as here, the defendant is a non-resident, and the action is for a money demand, and not *in rem*, he must, in the absence of voluntary appearance, be brought into court by personal service before a judgment *in personam* can be entered against him.

As appears from the record, the only service attempted to be made upon Conklin was by delivering a copy of the summons to a person designated, in the return thereof, as his " agent," and who was in " charge of defendant's property when the cause of action arose."

Our attention has been called to no provision of statute which authorizes service of summons to be made upon a natural person, who is without the State, by delivering a copy thereof to an " agent " of such person. Nor, even if there were such a statute, is there anything in the record to show that Conklin ever appointed an agent to receive service for him in case of legal proceedings

against him. Nor does it appear that he waived personal service. Under such circumstances no valid judgment, *in personam*, can be rendered against a non-resident natural person, because, the proceedings not being *in rem*, and there being no personal service, the court is without jurisdiction of the person, and therefore such a judgment, if rendered, is of no effect.

A leading case on this subject is *Pennoyer* v. *Neff*, 95 U. S., 714, where Mr. Justice Field, delivering the opinion of the court, said: "If, without personal service, judgments *in personam*, obtained *ex parte* against non-residents and absent parties, upon mere publication of process, which, in the great majority of cases, would never be seen by the parties interested, could be upheld and enforced, they would be the constant instruments of fraud and oppression. Judgments for all sorts of claims upon contracts and for torts, real or pretended, would be thus obtained, under which property would be seized, when the evidence of the transactions upon which they were founded, if they ever had any existence, had perished."

There having been in the case at bar no personal service of summons upon defendant Conklin, and no appearance by him or in his behalf, the judgment of $3,000 which had been entered against him was utterly void, and therefore, the court committed no error in afterward setting it aside on motion.

The judgment appealed from is affirmed with costs.

MINER, J., and BASKIN, J., concur.