[No. 8873.   Department Two.   August 20, 1910.]

THE STATE OF WASHINGTON, on the Relation of Minnie E. Galbraith et al., Plaintiff, v. THE SUPERIOR COURT FOR SPOKANE COUNTY et al., Respondents.[1]

EMINENT DOMAIN—IRRIGATION—PRIVATE OR PUBLIC USE—CONSTITUTIONAL LAW. Const., art. 1, § 16, prohibiting the taking of private property for private use, except for drains, flumes, or ditches for agricultural etc., purposes, and art. 21, § 1, providing that irrigation etc. purposes shall be deemed a public use, confer legislative authority for Rem. & Bal. Code, §§ 6326 et seq., authorizing the condemnation of land for irrigation ditches by a private owner of agricultural lands.

EMINENT DOMAIN—PUBLIC USE—DETERMINATION. The declaration in const., art. 1, § 16, that the question of public use shall be a ju-

[1]Reported in 110 Pac. 429.

dicial question to be determined irrespective of legislative assertion, does not mean that it is to be determined without reference to constitutional assertions upon the subject.

EMINENT DOMAIN—IRRIGATION—ARID LANDS—NECESSITY—BENEFITS. The right to condemn rights of way for irrigation is not limited to the owners of arid land; and sufficient benefit will result to warrant condemnation for irrigation where it appears that the land is semi-arid, raising only a light crop of wheat or wheat hay or crops maturing early in July, while with irrigation it will produce abundantly almost any crop and will be increased $125 to $150 per acre in value.

EMINENT DOMAIN—IRRIGATION—NECESSITY. The right to condemn rights of way for irrigation contemplates irrigation by gravity, and cannot be defeated by the fact that the land could be irrigated by pumping.

EMINENT DOMAIN—IRRIGATION—USE OF LAND. Condemnation for an irrigation canal by a water company owning the lands which it seeks to irrigate cannot be defeated by the fact that the company intends to sell the irrigated lands and that its purpose is speculative.

Certiorari to review an order of the superior court for Spokane county, Hinkle, J., entered April 29, 1910, adjudging a public use and necessity in condemnation proceedings by an irrigation company. Affirmed.

*Peacock & Ludden,* for relators, contended, among other things, that the act in question should not be construed to authorize condemnation for speculative purposes. *Crisman v. Heiderer,* 5 Colo. 589; Weil, Water Rights, Western States, § 256. The water company is not acting as a public servant, and the public must have a right to the actual use of the water. *State ex rel. Wilson v. Superior Court,* 47 Wash. 397, 92 Pac. 269; *State ex rel. Ami Co. v. Superior Court,* 42 Wash. 675, 85 Pac. 669; *State ex rel. Harris v. Superior Court,* 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672; *Borden v. Trespalacios Rice & Irr. Co.* (Tex. Civ. App.), 82 S. W. 46.; *Pittsburg etc. R. Co. v. Benwood Iron-Works,* 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; *Varner v. Martin,* 21 W. Va. 534; *Fallsburg Power & Mfg. Co. v. Alexander,* 101 Va. 98, 43 S. E. 194, 99 Am. St. 855, 61 L. R. A.

129; *In re Barre Water Co.,* 72 Vt. 413, 48 Atl. 653, 82
Am. St. 914; *Avery v. Vermont Elec. Co.,* 75 Vt. 235, 54
Atl. 179, 88 Am. St. 818, 59 L. R. A. 817; *Berrien Springs
Water Power Co. v. Berrien Circuit Judge,* 133 Mich. 48,
94 N. W. 379, 103 Am. St. 438; *Brown v. Gerald,* 100 Me.
351, 61 Atl. 785, 109 Am. St. 526, 70 L. R. A. 472; *State
ex rel. Tacoma Industrial Co. v. White River Power Co.,*
39 Wash. 648, 82 Pac. 150, 2 L. R. A. (N. S.) 842. Where
the use is not a public use, the fourteenth amendment to the
Federal constitution is violated. *State ex rel. Tacoma Indus-
trial Co. v. White River Power Co., supra; Missouri Pac. R.
Co. v. Nebraska,* 164 U. S. 403; *Fallbrook Irr. Dist. v.
Bradley,* 164 U. S. 112, 158; *In re Tuthill,* 163 N. Y. 133,
57 N. E. 303, 79 Am. St. 574, 49 L. R. A. 781.

*Allen & Allen,* for respondents.

PARKER, J.—The respondent Spokane Valley Land &
Water Company, which we will hereafter call the company,
commenced eminent domain proceedings in the superior court
for Spokane county to acquire a right of way over land of
the relators for the purpose of a canal to carry water to and
irrigate land belonging to it. The cause came on for hear-
ing before the court upon the questions of public use and
necessity, when the court, after the introduction of evidence
and argument of counsel upon those questions, adjudged that
the proposed use was public and that the right of way sought
to be acquired was necessary to the proposed use, and ordered
a jury to be empanelled to determine the amount of damages
resulting to the relators on account of the taking. The re-
lators, considering themselves, aggrieved, have by writ of
review brought the cause to this court, asking a reversal of
these rulings of the trial court; their main contention being
that the company's proposed use of the right of way sought
to be acquired is not a public use.

The company claims the right to acquire by condemnation
a right of way for its proposed irrigation canal over the

relators' land under the provisions of chapter 131, p. 261, Laws of 1899 (Rem. & Bal. Code, § 6325 *et seq.*), which, so far as necessary for us to notice, are as follows:

"§ 6326. All persons who claim, own or hold possessory right or title to any land, or parcel of land or mining claim within the boundaries of the State of Washington, when such lands, mining claims or any part of the same are on the banks of any natural stream of water, shall be entitled to the use of any water of said stream not otherwise appropriated for the the purposes of mining and irrigation to the full extent of the soil for agricultural purposes.

"§ 6327. When any person owning claims, lands or mining claims as specified in the foregoing section, is not a riparian proprietor or being such has not sufficient frontage on said stream, lake, artificial stream, ditch or reservoir, to obtain a sufficient flow of water to irrigate his land or use on his mining claim, he shall be entitled to the right of way through the farms or tracts of lands or other mining claims which lie between him and said stream, lake, artificial stream, ditch or reservoir, or the farms, tracts of lands or mining claims which lie above and below him on said stream, lake, artificial stream, ditch or reservoir.

"§ 6328. Such right of way shall extend only to a ditch sufficient for the purpose required, together with the right of ingress and egress to construct, maintain and repair the same; and whenever any person or persons find it necessary to convey water for the purposes of irrigation or mining through the improved or occupied lands of another, he or they shall select for the line of such ditch through such property the shortest and most direct route practicable upon which can be constructed with uniform or nearly uniform grade, and discharging the water at a point where it can be conveyed to and used upon the land or lands or mining claim of the person or persons constructing such ditch, canal or works.

"§ 6329. Upon the refusal of the owner of the lands, lessees or those in possession, through which it is proposed to run said canal, ditch or works to permit the passage of the same through their property the person or persons desiring the right of way for such ditch, canal or works may proceed to condemn and take the right of way therefor as hereinafter provided."

The substance of the facts upon which the learned trial court based its decision may be briefly summarized from its findings as follows: The respondent company is a corporation, organized and existing under the laws of this state for the purpose of owning lands and water rights, and for the purpose of constructing and maintaining irrigating canals and ditches and conducting water through the same to irrigate such lands. The Spokane river flows westerly through the county of Kootenai, in the state of Idaho, and the county of Spokane, in the state of Washington. The company has appropriated and acquired the right to divert and use for irrigation purposes 250 cubic feet per second of time of the water flowing in the Spokane river, at a point about five miles east of the boundary line between the states of Idaho and Washington, to be conveyed by a canal in a westerly direction in the valley of the Spokane river through the counties mentioned a total distance of nineteen miles. The company has caused the line of its proposed canal to be surveyed and located upon the ground from the point of diversion in a westerly direction a distance of nearly nineteen miles, and has constructed and completed twelve miles of its canal, with lateral ditches leading therefrom by means of which large quantities of land are being irrigated. The company is the owner of lands amounting to about 1,500 acres in Spokane county situated along and adjacent to the proposed line of its canal where the same is not yet completed. These lands, without irrigation, will produce no crops of value and are of little value, but with irrigation will produce large and valuable crops of vegetables, grain, hay, fruits, and other agricultural products. These lands the company desires and intends to irrigate with the water from its proposed canal, and it has sufficient water for that purpose which it can convey through its proposed canal providing it is completed so as to reach these lands. The line of the proposed canal is located through the land of the relators where the company seeks its right of way therefor, which line so located is the most direct

route practicable upon which the canal can be constructed with uniform or nearly uniform grade and discharge the water by gravity at a point where it can be used upon the lands of the company proposed to be irrigated thereby; and the right of way for the proposed canal over the land of the relators is necessary for the construction thereof and to enable the company to irrigate its lands which are along and adjacent to the proposed line of the uncompleted portion of the canal. A portion of the lands of the company sought to be irrigated by this proposed canal abut upon the Spokane river, but the larger part of the lands do not abut upon the river, and are separated therefrom by land not owned by the company and the company has not sufficient frontage to obtain a sufficient flow of water to irrigate the lands proposed to be irrigated; and it is impracticable and unprofitable to irrigate any of the lands by pumping water from the Spokane river or from wells, or in any other manner than that proposed by the company. In connection with this last fact, it may be stated, though the court made no findings thereon, that the evidence shows that practically all of the land abutting upon the river is too high above the river to be irrigated by gravity from any point at which such lands abut upon the river.

Exceptions were taken by counsel for the relators to most of the findings, the substance of which we have briefly stated; but a careful reading of all the evidence brought here for our review convinces us that the court found the facts substantially as they exist, except that the lands of the company sought to be irrigated may not be quite so arid and devoid of crop producing value as the findings indicate. This fact, however, does not affect our conclusions, as will be seen later. We regard the foregoing as all the material facts affecting the right of the company to condemn, though we will later have occasion to notice some other facts in connection with some minor contentions made in behalf of the relators.

By far the larger part of the argument of learned counsel

for the relators is based upon the fact that the company is not a public service corporation, and that it does not claim the right to condemn the land of the relators upon that ground, but claims the right only as any single private landowner may claim such right under this law. We will proceed upon the assumption that such is its claim; and that the company is under no obligation whatever to serve the public, though we do not decide what its public service obligations are.

It is the law in this state, as it appears to be in many western states having large areas of arid land capable of being reclaimed or rendered more productive by irrigation, that the test of public use in the acquiring of water rights and rights. of way for canals and ditches to convey water to land for the purpose of irrigating the same is not necessarily the service the parties seeking to acquire such rights may be compelled to render to the public in connection therewith. Sec. 16, art. 1 of our state Constitution, provides,

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes."

Here is an inference so strong as to amount almost to an affirmative declaration that private property may be taken for private use when the use is confined to the purposes enumerated in this provision, one of which is ditches on or across the land of others for agricultural purposes; and it is no strained construction of the provision to say that this includes ditches for irrigation purposes, in view of the vast extent of arid land within our state and the benefits of irrigation thereto in the increase of its productiveness and value. The very thought of agriculture in connection with this vast arid portion of our state suggests irrigation in connection therewith. These facts and conditions were well known at the time of the making of our constitution, and it seems idle to doubt that they were in the minds of both the constitution

framers and the people in the making and adoption of that instrument as the fundamental law of the state. The constitution further provides in sec. 1, art. 21,

"The use of the waters of this state for irrigation, mining, and manufacturing purposes shall be deemed a public use."

Learned counsel for the relators call our attention to the case of *State ex rel. Tacoma Industrial Co. v. White River Power Co.*, 39 Wash. 648, 82 Pac. 150, 2 L. R. A. (N. S.) 842, where it was held that this last-quoted provision does not authorize the giving of the power of eminent domain to a private manufacturing company, to enable it to acquire water rights by condemnation; from which it is argued that, since this respondent company is under no obligation to serve the public, but seeks only to acquire this right of way for the purpose of conveying its own water to its own land for irrigation thereof, it is in no better position to assert the right of eminent domain than was the Tacoma Industrial Company in that case. We do not think that decision is controlling here, as is clearly indicated by the comment therein upon the irrigation case of *Clark v. Nash*, 198 U. S. 361, affirming the supreme court of Utah, which case was there cited as apparently supporting the Industrial Company's right to condemn. Judge Rudkin, in speaking for this court, there said, at page 670:

"There is, however, a vast difference between the use of water for manufacturing and for irrigation. In the latter case, there is no choice of means or location. The necessity is an absolute one, if the land is to be reclaimed at all. Not so, with a manufacturing plant. The question of location and motive power is one of economy and convenience at most."

We have seen that this statute, under which the company claims the right to condemn, clearly purports by its terms to give this right without any reference whatever to any obligation on the part of the party seeking to condemn to serve the public. Learned counsel's argument does not seem to be an attack upon the constitutionality of the law, but is, in effect,

that the question of public use must be determined solely as a judicial question regardless of the legislative assertion upon that subject. In support of this view, reliance is placed upon the concluding language of section 16, art. 1 of the state constitution, which is as follows:

"Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public."

But this does not mean that in judicially determining a question of public use we are to lose sight of all other constitutional provisions. We have quoted the constitutional provision which clearly indicates that property may be taken under the power of eminent domain for certain enumerated private uses, among which are ways for ditches for agricultural purposes. While this provision in terms seems to give the power to take for private use, it was evidently adopted upon the theory that the public would be sufficiently benefited by the taking for such a purpose to warrant the taking; that is, though it be seemingly called a private use by these words of the constitution, it is also in effect a public use in view of the necessities of a state like ours having vast areas of arid land. These considerations lead us to conclude that, notwithstanding our constitution has declared that the question of public use shall be a judicial one, and is to be determined without reference to legislative assertion upon the subject, such question is not to be so determined without reference to constitutional assertions upon the subject.

The supreme court of Utah, under a law giving the right of condemnation for irrigation substantially as is given in this law, in the case of *Nash v. Clark*, 27 Utah 158, 75 Pac. 371, 101 Am. St. 953, 1 L. R. A. (N. S.) 208, held that a private owner of 80 acres of arid land had the right to acquire a right of way by condemnation over private property for the purpose of conveying water to such land for irrigation there-

of, and that in view of the conditions existing in that state such use of the water and the right of way sought to be acquired for its conveyance is a public use. It appears in that decision that the court gave no consideration to any constitutional provision save, "Private property shall not be taken or damaged for public use without just compensation," which is there considered as meaning "That private property cannot be taken for strictly a private use." We assume that the court did not regard any other provision of the Utah constitution as bearing upon this subject. Therefore it would seem that the court reached its conclusion without the aid of other constitutional provisions such as are found in our state, which we have seen clearly indicate that property may be acquired by right of eminent domain for such use. That case was removed to the supreme court of the United States, *Nash v. Clark*, 198 U. S. 361, by writ of error, and there affirmed, the court holding that the right of eminent domain thus conferred was within the legislative power of the state of Utah, and did not violate any rights guaranteed by the Federal constitution.

The supreme court of Montana also upholds the right of condemnation for irrigation purposes in favor of private landowners. *Ellinghouse v. Taylor*, 19 Mont. 462, 48 Pac. 757, under a state constitutional provision reading as follows:

"The use of all water now appropriated, or that may hereafter be appropriated for sale, rental, distribution or other beneficial use and the right of way over the lands of others, for all ditches, drains, flumes, canals and acqueducts, necessarily used in connection therewith, as well as the sites for reservoirs necessary for collecting and storing the same, shall be held to be a public use."

This provision, it seems to us, goes no farther in support of this right than those we have quoted from our constitution. The following decisions from this court lend some support to this view, though they do not involve this exact ques-

tion. *Lewis County v. Gordon,* 20 Wash. 80, 54 Pac. 779; *Weed v. Goodwin,* 36 Wash. 31, 78 Pac. 36. The latter involved the validity of this same law, but not on the question of public use. 1 Lewis, Eminent Domain (3d ed.), § 308; *Oury v. Goodwin,* 3 Ariz. 255, 26 Pac. 376; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112.

These authorities, we think, support the company's contentions in this case, though they relate to an exercise of the right of eminent domain by, or for the benefit of, more than a single landowner. If, however, this point be urged to avoid the force of these authorities in support of the company's contention in the present case because the right is here claimed by a single private landowner, we would answer it in the language of the supreme court of Montana, used in the *Ellinghouse* case, at page 464, as follows:

"What real distinction is there, so far as the term 'public use' is concerned, between the benefit that results to a state from the reclamation by artificial irrigation of 160 acres of agricultural land owned by one or two persons, and the reclamation by the same means of thousands of acres owned by many different persons living together in one subdivision of the state? We do not think there is any in principle. The reclamation of one small field by means of artificial irrigation promotes the development and adds to the taxable wealth of the state as well as the reclamation by the same means of a number of fields. The only difference is the extent of the benefit."

The benefit to the public which supports the exercise of the power of eminent domain for purposes of this character, is not public service, but is the development of the resources of the state, and the increase of its wealth generally, by which its citizens incidentally reap a benefit. Whether such development and increased wealth comes from the effort of a single individual, or the united efforts of many, in our opinion does not change the principle upon which this right of eminent domain rests. What we have said thus far is sufficient to determine the case, so far as the general principle involved is

concerned. It only remains to notice some minor contentions made in behalf of the relators.

We have noticed that the land sought to be irrigated may not be so arid and devoid of agricultural value as indicated by the court's findings. Exception was taken to the findings upon this question, and it is contended that the land is not in fact so devoid of agricultural value as to warrant the exercise of the condemnation right here sought. We are convinced, however, from the evidence that in any event the value and usefulness of the land from an agricultural standpoint will be very materially enhanced by its proposed irrigation. One of the witnesses testified, in substance, that without irrigation about the only crop that is raised in this valley is a light crop of wheat or wheat hay, and that with irrigation there can be raised all the so-called small fruits, also alfalfa, sugar beets and vegetables, all producing good crops; and that the land with water is worth several times as much as without water. Another witness testified that it is semi-arid land and without irrigation will grow fairly good crops of wheat, and wheat and oat hay; but will grow only such crops as mature before the middle of July, after which it dries up; and that with irrigation it will produce abundantly most any crop put upon it; and that irrigation will increase its value from $125 to $150 an acre over its value without irrigation. The testimony of these witnesses is not materially different from that of others. The witnesses differ somewhat in their opinions as to the extent of the wheat and oat crops capable of being produced without irrigation; but all agree that irrigation very materially enhances the productiveness of the land. Neither the constitution nor this law limits the right of condemnation to owners of land which is entirely devoid of agricultural value without irrigation, and we think the evidence clearly shows that a sufficient benefit will result to the land by the proposed irrigation to warrant the exercise of the right of eminent domain here invoked to accomplish that end. *Fallbrook Irr. Dist. v. Bradley*, 164 U. S. 112, 166.

It is also claimed in behalf of the relators that the evidence shows, and findings were so requested, that the water in the river flowing by portions of the land, and the water under the land which could be reached by wells, was sufficiently accessible to enable the owner to irrigate by pumping. It is true the evidence indicates that water may be gotten upon the land to some extent by this method; but we think the evidence also shows that such method is not at all a practical or profitable method of irrigation, as compared with the method proposed; besides, it is clear that the constitution and this law both contemplates irrigation by gravity; and we do not think the right to condemn was intended to be withheld simply because water might be put upon the land by pumping.

It is also claimed that the learned trial court erred in refusing to find that the company is engaged, and has been engaged, in buying up lands for the purpose of bringing the same under irrigation by means of its canal as already constructed and as proposed to be constructed; and that its purpose is speculative. Finding upon this fact was evidently refused because the learned trial court regarded such fact as immaterial rather than because such fact did not exist. We agree with the learned trial court that as long as the lands are proposed to be irrigated for the purpose of enhancing their agricultural productiveness and value, it is utterly immaterial what the purpose of the company was in acquiring the lands or whether it proposes to farm the lands itself or proposes to sell them off in tracts of varying size to others. The fact remains that the company owns the water and owns the lands proposed to be irrigated, and that their irrigation will promote the public good by a means intended to be fostered by our constitution. Of course it acquired the lands with intent to profit by their use or sale. That is only exercising a right incident to ownership as any private owner may exercise it.

We are of the opinion that the proposed use of the right of way sought to be acquired over the relator's land is such as to

support the exercise of the right of eminent domain in acquiring the same by this respondent company, under the provisions of our constitution and this law. The judgment of the learned trial court is affirmed.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.