[No. 21668. *En Banc.* January 31, 1930.]

THE STATE OF WASHINGTON, *on the Relation of Thomas J. Henry et al., Plaintiffs*, v. THE SUPERIOR COURT FOR CHELAN COUNTY *et al., Respondents.*[1]

[1]Reported in 284 Pac. 788.

*Wm. A. Grimshaw, R. J. Venables,* and *Henry R. Newton,* for relators.

*Adams & Driver,* for respondents.

MITCHELL, C. J.—This is a certiorari proceeding to review an order of necessity made by the superior court of Chelan county in an eminent domain proceeding, wherein the North Pacific Mortgage Company seeks to condemn a location for a pumping station and a right of way for a pipe line for carrying water across the lands of relators, Thomas J. Henry and wife, upon whose lands the Federal Land Bank of Spokane has a mortgage.

Respondent's land is arid and, in its natural state, requires irrigation to produce commercial crops. There is no reasonable sufficient way of irrigating the land except by pumping water from the Wenatchee river over and across the intervening lands of the relators. Respondent acquired its land in 1926 by mortgage foreclosure proceedings against H. J. Bohlke and wife. While the land belonged to the Bohlkes, they planted and developed an apple orchard on it. In 1919, upon the orchard reaching the bearing stage and needing

water for irrigation purposes, they entered into a written contract with the Henrys by which the Henrys granted to Bohlke, his heirs, administrators, successors and assigns, a right of way, two feet in width, over and across the Henry land,

". . . for the purpose of carrying water in a pipe line, which at this time is estimated will be a ten-inch wood pipe, the same to be buried in the ground at least eighteen inches under the surface, where ground can be cultivated from the Wenatchee river to the lands of the second party hereto, situate in said section 25, township 24 north of range 18 E. W. M., together with the right of ingress and egress for the purpose of maintenance and repair of said pipe line."

It was further provided in the contract that, in consideration of the grant, Bohlke and wife, for themselves, their heirs, etc.,

". . . do hereby waive any right, now existing or hereafter to arise, of acquiring said right of way by proceedings in condemnation or otherwise, and do agree that the acquisition of said right of way by means of this grant shall be deemed to be an election to acquire it in that way and in no other way, and do hereby grant and convey to said T. J. Henry and wife, their heirs, executors, administrators and assigns, a perpetual right to take from said pipe line and use five inches of water, miner's measure under a four-inch pressure, continuous flow, while water is in said pipe line from any source whatever, said water to be taken at such point or points on said pipe line system as shall be designated by said Henry and wife, it being agreed by the parties hereto that the grant of five inches of water herein contained is a fair and reasonable compensation to Henry and wife for said right of way."

It was further stated in the contract that the grant by the Henrys of the right of way was subject to the condition that,

". . . if for any reason the said Bohlke and wife,

or any of his or their heirs, executors, administrators, grantees or assigns, fail or refuse to furnish water for the use of Henry and wife, as hereinbefore stipulated and agreed and granted, then the grant of the right of way herein made shall be defeated, terminated and ended, and the relation of the parties shall be the same as though said grant had never been made.''

Under the contract, a pipe line was constructed in 1919 along a two-foot right of way which has at all times since been maintained and used in pumping water when needed across the Henry land to the Bohlke land now owned by the respondent. The ten-foot right of way now sought to be taken is in substantially the same location as the present right of way.

Upon a preponderance of the evidence, the trial court entered proper findings of fact, including that of necessity, in favor of the petitioner, and from a preliminary order accordingly, the case has been brought here for review.

We cannot agree to the contention on behalf of the relators that there is no law for the taking of the property involved. Mindful of the need for water on the arid lands in this state, to promote the general welfare, the constitution, art. 1, § 16, in prohibiting the taking of private property for private use, made an exception ''for private ways of necessity, and for drains, flumes or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes.'' And as indicating the popular will and judgment upon this subject, art. 21, § 1 of the constitution says: ''The use of the waters of this state for irrigation, mining, and manufacturing purposes shall be deemed a public use.''

Now, if it be said that the provision of the constitution for a private way of necessity for drains, flumes, etc., across the lands of others for agricultural pur-

poses is not self-executing, it will be found, as we shall presently see, that the legislature has enacted full and complete statutes upon that subject, which statutes further declare that the beneficial use of water in this respect is a public use.

In this connection, it may be further observed that, while the concluding sentence in art. 1, § 16, provides that,

"Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public,"

we have, in such cases as this, under the constitution, consistently held such a use to be a public use. Among the cases so holding are *State ex rel. Galbraith v. Superior Court,* 59 Wash. 621, 110 Pac. 429, 140 Am. St. 893; *State ex rel. Andersen v. Superior Court,* 119 Wash. 406, 205 Pac. 1051.

Noticing the statutes upon the subject, we find that § 4 of the water code, Laws of 1917, ch. 117, p. 447, Rem. Comp. Stat., § 7354, provides that

"The beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire any property or rights now or hereafter existing when found necessary for the storage of water for, *or the application of water to,* any beneficial use, . . ." etc.

This statute is in *pari materia* with Laws of 1913, ch. 133, p. 412, entitled,

"An act relating to the taking of private property for private ways of necessity and for drains, flumes and ditches on or across the lands of others for agricultural, domestic or sanitary purposes."

Sections 1 and 2 of this act, being sections 6747 and

6748, Rem. Comp. Stat., which cover the subject-matter of the present action, are as follows:

"Sec. 1. An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity or to construct and maintain any drain, flume or ditch, on, across, over or through the land of such other, for agricultural, domestic or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, or for the construction and maintenance of such drain, flume or ditch, as the case may be. The term 'private way of necessity,' as used in this act, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried.

"Sec. 2. The procedure for the condemnation of land for a private way of necessity or for drains, flumes or ditches under the provisions of this act shall be the same as that provided for the condemnation of private property by railroad companies, but no private property shall be taken or damaged until the compensation to be made therefor shall have been ascertained and paid as provided in the case of condemnation by railroad companies."

The case of *State ex rel. Preston Mill Co. v. Superior Court,* 91 Wash. 249, 157 Pac. 689, required, as the court stated in the opinion, a construction of § 1 of the act just above mentioned. In that case, the mill company owned a large quantity of valuable standing timber which could not be taken to mill or market except by a logging railroad over and across land owned by Berger and wife. The action was brought to condemn

the necessary right of way, and, in construing § 1 of the act, it was said:

"It should be noted that this statute gives an owner of land which is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity the right to acquire such right of way by condemnation, and that the definition of the term private way of necessity includes logging roads. . . . Under the statute, the right to condemn exists when land is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity."

Precisely the same reasoning is applicable to the present case, under the statute. Respondent's orchard land is so situated, with respect to the only source of water and the land of the relators, that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity for a pumping location and pipe line on and across relators' land to force and carry water for irrigation purposes to the respondent's orchard, else the orchard will become worthless. It may be said therefore that there is ample authority in the law for the present condemnation proceedings.

Further, contention is made that there is no necessity for the proposed taking, because of the outstanding contract between the parties, heretofore set out, under which operations have been carried on since 1919. In this respect, counsel call attention to the case of *Sultan R. & Timber Co. v. Great Northern R. Co.,* 58 Wash. 604, 109 Pac. 320. That was a case where, in order to obviate the necessity for a logging road across the Great Northern Railway Company's road at grade, a written contract was entered into in 1904 by which the railway company agreed to transport logs at certain specified prices. Relying on the contract, the logging company expended some $60,000 in making

changes in its field of operations, and continued to ship logs for some years under the terms of the contract, until the railway company refused to longer carry logs at the contract prices, hence the suit to recover damages for the breach of the contract. It was held there was a valuable consideration for the contract, and the logging company was allowed to recover. The question of the superiority of the right of eminent domain to enforce a private way of necessity for a logging road crossing, as compared with the private contract the parties had entered into to obviate the necessity of such crossing, was in no way involved in that case.

But we had to meet this question in the *Preston Mill Co.* case, *supra,* where the mill company, under contract, was already operating a logging road over the way it sought to condemn, and, contrary to the opinion of the trial court in that case, upon stating that:

" . . . there is no provision in the statute requiring a person desiring to acquire a right of way for a logging road to first attempt to secure that right of way from the owner of the land over which the road must pass by private contract. Neither is there any provision in the statute that prevents the condemnation if a right has previously been acquired by contract,"

we held that:

"The right to condemn must be measured by the terms of the statute. As we read the statute, the right of condemnation does not in any sense depend upon what private agreement the parties may have made, or have attempted to make."

Comparing that case with the present one, counsel attempt to distinguish the two, because, as they say, in that case the tenancy or occupancy was from year to year and capable of being terminated, while here the contract is perpetual. Of course we are not passing upon the validity of the contract in any way, but, as-

suming the difference in the contracts to be as counsel say, still in our opinion it is a difference in degree only and not in kind. In each case we find the condemning party in rightful occupancy of the property to be taken and seeking to have his rights under condemnation become operative at once rather than at some future time.

The case of *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 Pac. 689, cited on behalf of relators, in no way helps their cause. It is enough to say that in that case the court said: "The burden of proof is on the petitioner to show a reasonable necessity. We are of the opinion that the petitioner did not maintain this burden." Nor is the case of *State ex rel. Stephens v. Superior Court,* 111 Wash. 205, 190 Pac. 234, cited by relators, in point. That case called attention to the rule that the question of necessity is a question of fact, and that the proof in the case was not sufficient to show a reasonable necessity for a logging railroad across private property. It was found that another way, viz, a stream nearby capable of floating logs, was sufficiently feasible. In the case at bar, however, all of the proof shows there is no other feasible, practicable way for a pipe line to irrigate the land in question.

The question of waiver mentioned in the contract is, to a considerable extent, relied upon by relators. Whether considered from the standpoint of contract against, or waiver of, the right of eminent domain, the result is alike against the contention of the relators. The use to which the water is to be put is a public use, and, as stated in the *Galbraith* case, *supra*:

"The benefit to the public which supports the exercise of the power of eminent domain for purposes of this character, is not public service, but is the development of the resources of the state, and the increase of

its wealth generally, by which its citizens incidentally reap a benefit. Whether such development and increased wealth comes from the effort of a single individual, or the united efforts of many, in our opinion does not change the principle upon which this right of eminent domain rests."

The exercise of this right or power is so inherently governmental in character and necessary for the public welfare that, in our opinion, even the guaranteed right of private contract is not sufficient to warrant an attempted abridgment of it. To admit that the state, any municipal subdivision of it or any single individual in it may, by contract, barter away, restrain or limit this power is, as to ultimate results, the equivalent of saying that the power can be renounced altogether. This we are satisfied cannot be done. The purported attempt at waiver of the right or power contained in the contract in this case is without any legal effect.

Still further, it is contended that the plan outlined in these proceedings does not constitute a drain, flume or ditch as contemplated in the law. That is, that here it is intended to force the water uphill, while the words or terms found in the constitution and statute permit only a gravity flow. That is, it is contended that the words defining the means of exercising a power intended to promote the general welfare shall be strictly construed. That view applied in the present case would, of course, deprive the respondent of the benefit of the law. There is no other way, as all the testimony in this case shows, for respondent's lands to be irrigated other than to force the water upon them. We cannot subscribe to the view urged by the relators. Words used in constitutions and statutes must be given the meaning manifestly intended. There must be no blind adherence to technical definition of words if it results in defeating the intent of the instrument.

A good illustration is furnished in the case of *Spickerman v. Goddard,* 182 Ind. 523, 107 N. E. 2, where it was held that under a clause of the Indiana constitution which provided that all elections of the people shall be by ballot a statute providing for the use of voting machines was valid because within the purpose and intent of the framers of the constitution. Other examples might be given.

Other cases from this and other states discussing questions similar to those in this case have been called to our attention which, upon examination, we think need not be analyzed or discussed. The cases already referred to we think are controlling.

Our holding that the power to condemn in this case is superior to any right under the existing contract between the parties necessarily excludes any idea of error, claimed by the relators, on the part of the trial court in denying their motion to require respondent to elect whether it seeks to take relators' right to five inches of water from the pipe line or merely the right of way and will continue to deliver five inches of water to the Henry land. If that question is in this case, it will arise at the final hearing in fixing the amount of compensation to be paid relators, without any further pleading.

Another assignment of error is that the court erred in denying motions designed to compel respondent's petition in condemnation to be made more definite and certain by setting out the nature of the estate —whether in fee or an easement—it proposes to take in the property sought to be condemned. But the pleading is sufficient in that respect; the statute fixes that matter.

The denial of other motions against the petition resulted, in our opinion, in no prejudice to a fair trial on the question of compensation. The general de-

murrer to the petition was properly overruled, and, as heretofore stated, there was in our opinion a preponderance of the evidence to sustain the findings of fact in favor of the right to condemn.

Affirmed.

MAIN, PARKER, TOLMAN, BEALS, and MILLARD, JJ., concur.

HOLCOMB, J., (dissenting)—I can see no necessity, in law, or in fact, present or future, for condemnation under eminent domain. I therefore dissent.

FRENCH, J., (dissenting)—I am unable to agree with the majority opinion. One of the basic principles on which the right of eminent domain rests is that there must be a necessity in fact for the taking of the property sought to be condemned.

Without reviewing the record in this case, it sufficiently appears, and in fact is conceded by the majority opinion, that the respondent mortgage company now has a right in perpetuity to cross the lands of relators for the purpose of maintaining a pipe line. This is all they can obtain or hope to obtain in the condemnation proceedings which have been instituted. It is inconceivable to me that one can start proceedings to secure a right he has already obtained by private contract, particularly where, as in this case, he can obtain no other, further or greater right than the contract already gives him.

In this connection, it might be well to call attention to the trial court's finding No. 5, which reads as follows:

". . . at all times prior to filing this proceeding has had and now has and enjoys a right of way easement under and by virtue of that certain agreement hereinabove mentioned for a ten-inch pipe line and has had and now has said pipe and pumping plant of sufficient capacity to fully supply all its said lands both

irrigated and possible of irrigation, in, over, and upon or across the lands of relators Henry and has had and now has the right of ingress and egress for the purpose of maintenance and repair of said pipe line and plant.''

This finding shows conclusively that every right obtainable by condemnation has already been obtained years ago by private contract, and that there is in fact no necessity for condemnation.

It is true that, generally speaking, the courts will not inquire into the motives actuating the condemnor in seeking to condemn particular property, although there are cases to the contrary; but in this particular case, it is apparent that the only object and purpose in condemning this land is to obtain relief from the obligations imposed by the contract in question. Public policy requires that persons competent to contract shall have the right to contract, and that their contracts, if entered into fairly and voluntarily shall be held sacred and enforced by the courts.

The respondent mortgage company and its predecessor in interest having obtained by contract every right which it can obtain by eminent domain, justice and fair dealing demand that it be required to abide by the terms of the contract under which it and its predecessors have been operating for a period of about ten years last past.

I therefore dissent.

FULLERTON, J., concurs with FRENCH, J.