[No. 39409.    Department One.    August 3, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES F. CHARL-
TON *et al.*, *Petitioners*, UNITED SERVICE & UTILITIES
COMPANY *et al.*, *Respondents.**

*William O. Kumbera,* for petitioners.

*The Attorney General* and *Roger A. Gerdes, Assistant,*
for respondents.

DENNEY, J.†—Petitioners, by writ of certiorari, seek rev-
ersal of an order adjudicating public use and necessity in a
condemnation action. The state sought petitioners' land for
road purposes near the intersection of S. 188th Street, Mili-
tary Road and the Seattle-Tacoma Freeway.

*Reported in 430 P.2d 977.

†Judge Denney is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Negotiations between the state and petitioners commenced in 1959 for the acquisition of right-of-way and limited access rights by the state to widen S. 188th Street and provide better alignment of the adjacent roads with the undercrossing under the new freeway and the on-and-off ramps to the freeway. In 1964, as a result of these negotiations, petitioners executed a deed to the state of a portion of their land in consideration of payment of $4,318.15. The state also conveyed a small tract of land to petitioners and an agent of the state agreed to refrain from offering objection to vacation of a road between the remaining land of petitioners and the land acquired from the state. This permitted petitioners to assemble a tract of land near the freeway valuable as a service station site.

Two years later, in 1966, the state adopted a new plan for the enlargement of the interchange to facilitate movement of traffic under the freeway from the rapidly developing area near Kent and the Seattle-Tacoma Airport and to facilitate movement of traffic on and off the freeway at this point. In doing so, the state seeks to condemn a portion of petitioners' land, including the land acquired from the state in 1964, and thereby impair, if not destroy, the proposed service station site. Petitioners contend that the state was arbitrary and capricious in selecting respondents' land for the improvement and that the state is estopped from taking the lands because of its previous dealings with petitioners between 1959 and 1964.

The trial court entered an order of public use and necessity and petitioners seek a reversal of that decision.

Petitioners' first contention that the state's present plan is arbitrary and capricious is not supported by any evidence. The state's testimony showed clearly that the new plan is necessary and desirable to cope with changed conditions which have occurred since the promulgation of the plan carried out in the 1964 exchange of deeds, and is therefore neither arbitrary nor capricious.

Petitioners' main contention is that the state is estopped from now taking the same land which was earlier deeded to

750

them, which would destroy their chance to develop the site for service station purposes as was contemplated by both the agent of the state and petitioners in 1964. In support of this contention they rely upon the case of *P.U.D. No. 1 of Douglas Cy. v. Cooper*, 69 Wn.2d 909, 421 P.2d 1002 (1966).

. There is authority in this state to the effect that the power of eminent domain cannot be surrendered or bartered away, nor can an agent of the state bind it to a restricted exercise of that power. *State ex rel. Devonshire v. Superior Court*, 70 Wn.2d 630, 424 P.2d 913 (1967), *State ex rel. Henry v. Superior Court*, 155 Wash. 370, 284 Pac. 788 (1930). It has also been held that the right to condemn may be exercised under the constitution without reference to contract rights. *State ex rel. Polson Logging Co. v. Superior Court*, 11 Wn.2d 545, 119 P.2d 694 (1941), *State ex rel. Lincoln v. Superior Court*, 111 Wash. 615, 191 Pac. 805 (1920), *North Coast R.R. v. Kraft Co.*, 63 Wash. 250, 115 Pac. 97 (1911). We do not find it necessary in deciding this case to determine whether or not the state can under *any* circumstances be estopped from exercising the power of eminent domain. This is so because of our belief that no facts were proven or proffered which would estop the state from taking petitioners' land.

Petitioners introduced the deeds and petitioner Charlton testified generally to the facts heretofore outlined. After a colloquy between court and counsel, petitioners made the following offer of proof:

MR. HALL: I would now offer to prove by this witness who would answer to the proper questions that they entered into negotiations with Mr. Easterling of the State on the transactions illustrated in Exhibits 6 and 7, that the State made the initial request for lands, that the witness in both instances then responded by requesting that certain other lands or other considerations be delivered to them, that in discussions they raised the issues of the availability of access to this land and the location of intersections relative to this land, all for the express purpose—I say the "express" purpose—of allowing this witness to develop that land as a commercially usable site.

It is clear that the offer of proof did not go beyond showing a promise by the state right-of-way agent to cooperate in aiding petitioners to develop a commercially usable site. There was no offer to show that the state made any representation of fact nor is there any suggestion that any express or implied promise was made that no further condemnation action would be commenced in the future.

■ ■ Equitable estoppel arises when a person wrongfully or negligently, by his acts or representations, causes another who has a right to rely on such acts or representations to change his position for the worse, in which event the party making such representations cannot be allowed to prove their falsity to his own advantage. *Carruthers v. Whitney*, 56 Wash. 327, 105 Pac. 831 (1909). No misrepresentation of fact is suggested nor did the act of the state, in its negotiations and settlement with petitioners in 1964, involve any wrongful or negligent act. The bare fact that 2 years later the state found it wise and prudent to enlarge and improve the interchange is not a basis for invoking the doctrine of estoppel when petitioners' land became necessary to carry out the improvement. There is no proof that conditions did not change in the 2 year interim, or that the state acted dishonestly in promulgating an enlarged interchange, or that in so doing it reneged on any representation to petitioners.

The burden of proving an estoppel is on the party asserting it and is not to be taken as sustained by doubtful inference. *P.U.D. No. 1 of Douglas Cy. v. Cooper, supra, Stouffer-Bowman, Inc. v. Webber*, 18 Wn.2d 416, 139 P.2d 717 (1943). Furthermore, as stated in the *Cooper* case, the doctrine is not a favored one when applied to municipal corporations or the state when acting in a governmental capacity. Under the test heretofore set out, the evidence and offer of proof fall far short of presenting a situation where estoppel can be successfully invoked.

Petitioners rely on the case of *State ex rel. Shannon v. Sponburgh*, 66 Wn.2d 135, 401 P.2d 635 (1965), which involved the action of the Washington State Liquor Control

Board in revoking its previous decision permitting a licensed tavern owner to move his tavern. This caused great damage to the tavern owner who had relied on the first action of the Board. The case before us does not involve the revocation of an order of a state board, but rather a change of plan and the exercise of the constitutional right of eminent domain because of changed conditions.

Petitioners contend that they were not permitted by the trial court to prove the facts which they believe estop the state from successfully maintaining this proceeding. Petitioners made an offer of proof of estoppel and we have, in deciding this case, assumed they could prove all of the matters set out in such offer. We find the offer inadequate and, therefore, petitioners suffered no prejudice by the rulings of the trial court.

The entry of the order of public use and necessity is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and HALE, JJ., concur.