656 P.2d 1257

**TUCSON ELECTRIC POWER COMPA-NY, an Arizona corporation, Plaintiff/Appellee,**

v.

**Eugene J. ADAMS, III, and Suzanne S. Adams, husband and wife; John R. Ferrell and Carol M. Ferrell, husband and wife; J. Michael Fromm and Georgene Fromm, husband and wife; George M. Griswold and Jean M. Griswold, husband and wife; John D. Schannep and Helen H. Schannep, husband and wife; Margery Bush, wife of Frank Bush; Robert R. Elkins and Corrine D. Elkins, husband and wife; Jean C. Baker, an unmarried woman; and Kingston J. Smallhouse and Dorothy J. Smallhouse, husband and wife, Defendants/Appellants.**

No. 2 CA–CIV 4186.

Court of Appeals of Arizona, Division 2.

Oct. 20, 1982.

Johnson, Dowdall & Payne by J. Mercer Johnson and Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by Donald E. Dickerman, Tucson, for plaintiff/appellee.

Bolding & Zavala by Michael O. Zavala, Tucson, for defendants/appellants.

OPINION

BIRDSALL, Judge.

This appeal arises out of a condemnation action. The appellee, Tucson Electric Power Company, filed its complaint against appellants and other property owners to condemn rights to allow the appellee to construct a second 138 KV circuit over easements it had acquired in condemnation proceedings in Pima County Superior Court No. 129474 in 1974. The issue of public use and necessity was tried to the court in November, 1980, with the trial on damages and appellants' counterclaim to follow. Prior to this second trial the court granted the appellee's motion in limine to prohibit introduction of certain testimony and exhibits with reference to the previous action, No. 129474.

The remaining issues of damages on the complaint and the counterclaim were tried to the court, a jury having been waived, and a judgment was entered July 6, 1981, awarding compensation damages to the appellants and denying any relief on the counterclaim.

The issues first presented on appeal concern the trial court's granting the motion in limine. By that ruling the appellants were precluded from offering evidence collaterally attacking the earlier condemnation judgment. The evidence consisted of the proposed testimony of the attorney who represented the condemnees in the prior action and various letters and other documents leading to the approval of the final judgment in that cause.

The appellants contend that the trial court erred because:

1) The prior judgment was ambiguous and therefore parol evidence was admissible

to show the meaning of certain language in the judgment.

2) The same parol evidence was admissible to prove their fraud allegations.

3) Improper standards were used to find no ambiguity in the language in the judgment.

4) The pretrial statement precluded the court from granting the motion in limine.

5) The court's ruling effectively dismissed the counterclaim without a trial, since all of their evidence was precluded by that ruling.

We disagree with appellants.

The facts necessary to an understanding of these issues concern the proceedings leading to the earlier judgment and that judgment itself.

In 1971 the appellee filed Cause No. 129474 in the Superior Court of Pima County to condemn certain of the restrictive covenants of Flecha Caida Ranch Estates No. 3 and certain parcels of real property in the subdivision to obtain a 50-foot right-of-way easement for the construction, operation and maintenance of a 138,000 volt or 138 KV transmission line.

The appellee brought the present action on January 24, 1980 to condemn the same restrictive covenants and additional rights in the same parcels of real property for the construction, operation and maintenance of a second 138 KV transmission line or circuit over the easement condemned in 1974 as a result of cause No. 129474. The earlier case was contested by a number of the owners in said subdivision, many of whom are appellants here. The trial court bifurcated the issues of public use and necessity and compensation for separate trial. The issue of public use and necessity was tried and a partial judgment entered which found that the taking of the 50-foot easement for construction, operation and maintenance of a 138 KV transmission line was for a public and necessary use.

The parties then entered into a compromise settlement of the remaining issue in accordance with various letters and proposed forms of judgment, the precluded ex-hibits. A final form of judgment was prepared, approved by the attorneys for the parties thereto, signed by the court and filed.

The provision in that judgment which appellants attack here is the language contained in paragraph 2 thereof that the transmission line is "to be operated only as a nominal 138,000 volt system." They contend the word "only" meant "forever" and that, by the use of that word the appellee agreed it would never again in the future condemn for additional use of that easement. All of the issues presented by the appellants are founded on this same theory, that is, that the appellee could never again exercise its right of eminent domain over the property.

This appeal was submitted without oral argument and taken under advisement. Upon our first consideration of the appeal after it was ordered under advisement, we informally agreed that none of the appellants' contentions had merit. We also thought that the final judgment of the trial court should be affirmed for another controlling reason. We therefore advised counsel that we believed the law to be that the power of eminent domain can never be surrendered or contracted away; that even if there is an attempt to contract away the power, it can be resumed at will. We ordered briefs to be filed on that issue. The appellee has responded with an exhaustive brief in support of the proposition, arguing that the judgment can be affirmed for that reason as well as the other reasons initially urged for affirmance. The appellants did not file a supplemental brief. Since we consider the law to be well settled, with no contrary authority, and since we do not wish to infer that the theory upon which the appellants commenced this action can be countenanced, we affirm on the basis we have raised sua sponte.

The appellee is a public service corporation as defined in Article XV, Section 2 of the Arizona Constitution. As a public service corporation the appellee is, for the purposes of condemnation, an agency of the

**398**

State of Arizona. A.R.S. § 12–1115(C) provides:

> "A person seeking to acquire property for any of the public uses authorized by this title is an agent of the state."

The appellee as a public service corporation has the right to condemn property for a necessary and public use for the purposes provided in A.R.S. § 12–1111.

■ The law is abundantly clear that a public authority cannot contract away its right to eminent domain since such action would deprive that authority of a power essential to public welfare. 26 Am.Jur.2d Eminent Domain Sec. 17.

The same principle is enunciated in 29A C.J.S. Eminent Domain Sec. 4:

> "... the sovereign power to take private property for public use cannot be surrendered, alienated, or contracted away, since it is essential to the public welfare and a sovereign power cannot be surrendered."

Over fifty years ago the Supreme Court of the United States in the oft-cited decision of *State of Georgia v. City of Chattanooga,* 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796 (1924), stated:

> "... The taking of private property for public use upon just compensation is so often necessary for the proper performance of governmental functions that the power is deemed to be essential to the life of the state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will...." 264 U.S. at 480, 44 S.Ct. at 370, 68 L.Ed. at 799.

This principle of law has been followed uniformly in all jurisdictions. The following decisions are closely analogous to the factual situation presented here.

In *Burke v. Oklahoma City,* 350 P.2d 264 (Okl.1960), the City of Oklahoma City commenced proceedings in 1941 to condemn a fee interest in 50 acres of land. The action was ultimately compromised by defendant's conveyance of a fee interest in 15.26 acres of land and the grant of an easement of 1.72 acres to the city. Thereafter the city commenced two separate actions to condemn a fee interest in 8.56 acres of land and an easement across and adjacent to the 1.72 acre parcel. In contesting these actions it was contended that the two tracts of land were involved in the previous condemnation action between the same parties which was dismissed and that such dismissal released both tracts from future condemnation proceedings and constituted res judicata and alternatively if res judicata was not applicable, the city would be estopped under the contract and dismissal to again seek to condemn land under the present proceedings. The trial court's summary dismissal of the landowners cross petitions was affirmed.

The issues presented were nearly identical to those in the present action: "Is a plea of res adjudicata and estoppel available as a defense in a second condemnation proceeding seeking to condemn the same land involved in a previous condemnation proceeding between the same municipality and owners which was dismissed pursuant to a contract and agreement?" 350 P.2d at 266–67. The court in considering these allegations stated:

> "... The elements of both res adjudicata and estoppel are present in the instant case and were properly raised and pleaded, yet in this particular action, such defenses are not available as against the City. To hold otherwise would be holding that a municipality can surrender, alienate and contract away or waive the right of eminent domain which it cannot do...." 350 P.2d at 267.

The court, further considering this question and analogizing the facts presented in *Burke,* referred to a similar action and stated:

> "... The facts in the case of *City of Moberly v. Hogan,* 317 Mo. 1225, 298 S.W. 237, are also similar to the facts in the case at bar. In that case the defendant alleged that after deeding certain land to the city for street purposes, the city agreed it would thereafter not acquire, take or demand any other part of the defendant's premises for said street. Thereafter, the City sought to condemn additional land and the Supreme Court on

appeal held: 'Right to exercise power of eminent domain cannot be contracted away and contract between the city and land owner, whereby city agreed not to condemn any land for a certain street, in consideration of the landowner's conveying to it certain land for that street, did not affect the city's power to condemn land therefor.' ... *We conclude and hold that the right of eminent domain is inalienable, cannot be surrendered in whole or in part and cannot be contracted away* and res adjudicata and estoppel do not constitute defenses to the causes of action set forth in the petition to condemn as filed by the City herein." (emphasis supplied) 350 P.2d at 268.

*See also Bowling v. State,* 428 P.2d 331 (Okl.1967).

In *Tennessee Gas Transmission Co. v. Violet Trapping Co.,* 200 So.2d 428 (La.App. 1967), the Louisiana court was faced with a similar situation. The plaintiff, "a natural gas company," brought an expropriation proceeding for a right of way for a 36-inch pipeline. The defendants contended plaintiff had already acquired the necessary right of way by a previous agreement entered into following an appeal of a prior proceeding wherein plaintiff was granted a right of way for one pipeline and where it was indicated a second pipeline was also contemplated. The question presented was whether plaintiff by the agreement contracted away its right to future expropriation for an additional right of way. The court in determining that it had not done so stated:

"The term "expropriation" used in our statutes is practically synonomous with the term "eminent domain." Expropriation means the right to take private property for public purpose and utility upon the payment first of just compensation ...."

\* \* \* \* \* \*

"This right, which had its origin in the inherent power of government, has been extended by statute to private corporations serving a public purpose. With this fundamental concept in mind it is immediately obvious that *a public utility, which enjoys the right of expropriation by virtue of its serving public purposes, cannot contract away that right granted to it by law for the public benefit.* We therefore hold that the plaintiff acquired the right by contract of August 12, 1958, to lay its second pipeline in the first canal without the payment to defendant of additional compensation, but that it did not and could not contract away its power of expropriation." (emphasis supplied) 200 S.2d at 433.

In *State v. Charlton,* 71 Wash.2d 748, 430 P.2d 977 (1967), the Supreme Court of Washington was faced with allegations of a landowner that the state was estopped from taking lands in a condemnation action for highway purposes because of its previous dealings with the landowner who granted a deed to a portion of his lands in consideration of not objecting to the vacating of a roadway. As to this claim of estoppel the court stated:

"There is authority in this state to the effect that the power of eminent domain cannot be surrendered or bartered away, nor can an agent of the state bind it to a restricted exercise of that power. *State ex rel. Devonshire v. Superior Court,* 70 Wash.2d 630, 424 P.2d 913 (1967), *State ex rel. Henry v. Superior Court,* 155 Wash. 370, 284 P. 788 (1930)." 71 Wash.2d at 750, 430 P.2d at 978.

*See also State, Parks and Recreation Com'n v. Schluneger,* 3 Wash.App. 536, 475 P.2d 916 (1970) and *State v. Superior Court,* 70 Wash.2d 630, 424 P.2d 913 (1967). The foregoing cases from the State of Washington are of particular significance since our supreme court in *Solana Land Co. v. Murphey,* 69 Ariz. 117, 124, 210 P.2d 593, 597 (1949), stated:

"While the opinion from the Supreme Court of Washington is not controlling, it is peculiarly persuasive both by reason of its sound reasoning as well as the fact that our constitutional provision on eminent domain was obviously copied from the constitution of that state...."

Other jurisdictions have decided cases analogous to the instant case. *See Council v. Texas Gas Transmission Corporation,* 202 So.2d 916, 917 (Miss.1967); *Waynesburg Southern Railroad Company v. Lemley,* 154 W.Va. 728, 178 S.E.2d 833 (1970).

█ We hold that the power of eminent domain cannot be surrendered or contracted away, and that even if a contract so provides the power can nevertheless be resumed at will. The appellants' counterclaim was subject to summary dismissal since it failed to state any legally cognizable claim.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.