NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL P. FIFLIS, et al., *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

TOWN OF CAVE CREEK, et al., *Defendants/Appellants/Cross-Appellees.*

No. 1 CA-CV 22-0067
FILED 4-11-2023

Appeal from the Superior Court in Maricopa County
No.  CV2019-052824
The Honorable Sally Schneider Duncan, Judge, *Retired*

**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL

Sims Mackin, LTD., Phoenix
By Kristin M. Mackin
*Co-Counsel for Defendants/Appellants/Cross-Appellees Town of Cave Creek &
Richard and Sheryl Sheiner*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Bradley R. Jardine
*Co-Counsel for Defendants/Appellants/Cross-Appellees Canyon Ridge Estates
Homeowners Association*

Michael P. Fiflis, Scottsdale
*Plaintiff/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1        Defendants the Town of Cave Creek, Richard and Sheryl Sheiner and Canyon Ridge Estates Homeowners Association (HOA) appeal from the grant of partial summary judgment for plaintiffs Michael Fiflis and Alisa McMahon (collectively Fiflis) on the scope of easements. Fiflis cross-appeals from the grant of summary judgment rejecting trespass, taking and injunctive relief claims.

¶2        The dispositive issue is whether easements that run near Fiflis' property and throughout Canyon Ridge Estates (CRE) can be used for bicycling, along with walking and riding horses. Fiflis has not shown that the grant of the public access easements excluded bicycling or that an amendment to the Declaration of Covenants Conditions & Restrictions (CC&R's) clarifying that use was improper. As a result, although affirming summary judgment rejecting Fiflis' claims, the grant of summary judgment limiting the public access easements to walking and riding horses is vacated. This matter is remanded with instructions to enter judgment consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶3        CRE is a subdivision with about 100 residential lots. In the mid-1990s, the developer and owner developed the 243-acre property as a Planned Unit Development (PUD). As part of that process, they submitted a preliminary PUD plan for consideration by the Town. At that time, the property included existing trails that were part of a larger trail network on land owned by others. The Town approved the preliminary PUD plan subject to stipulations, including that the "final plan shall clearly delineate all approved trails on the site. The trails shall be located within 15 foot wide public access easements." At that time, the trails were used for bicycling, walking and riding horses. The Town also required that all CC&R's "shall contain the requirement that the CC&R's shall be consistent with the approved stipulations."

¶4　　　　In February 1998, the Town Council approved the developer's final submission, including the Final Plat. The Final Plat declared that the developer and owner "hereby dedicate for use as such to the public, the streets and easements (drainage, water, sewer, equestrian, and emergency access) as shown platted hereon." The Final Plat specified many types of easements, including for trails and public access, roadways and highways, water and related facilities, utilities, construction and maintenance as well as drainage. The trail and public access easements are relevant here.

¶5　　　　The record shows that, when the Final Plat was approved, the existing trails on the land were being used by bicycles, pedestrians and equestrians. The Final Plat included descriptions and maps for public access and equestrian trail easements, marked on the Legend as "15' EQUESTRIAN TRAIL & PUBLIC ACCESS ESMT," with notes on the maps stating "15' EQUESTRIAN TRAIL AND PUBLIC ACCESS EASEMENT" and, in other places, "NOTE: DIMENSIONS ARE TO CENTERLINE OF TRAIL EASEMENT." The page of the Final Plat containing Lot 36 (which Fiflis owns) and 37 (which currently is burdened by the easements Fiflis challenges) shows the easements on those lots beginning at a cul-de-sac. As on the other pages, the Legend states "15' EQUESTRIAN TRAIL & PUBLIC ACCESS ESMT," with one reference on the map stating "NOTE: DIMENSIONS ARE TO CENTERLINE OF TRAIL EASEMENT." Nowhere do the references on the Final Plat map addressing Lots 36 and 37 reference "equestrian trail" alone.

¶6　　　　The Narrative Report submitted with the Final Plat described the easements in various places. The first reference, in addressing lot owner responsibilities, noted that "the equestrian/pedestrian trail . . . is located within a 15 foot public easement that crosses specific lots." The corresponding map did not differentiate permissible uses in the 15 foot public easement grant throughout the development. Elsewhere, the Narrative Report referenced the "multi-use trail within a 15 foot easement," referencing an "equestrian/pedestrian circulation." The Narrative Report also referenced placement of "all equestrian/pedestrian trail easements." As approved by the Town Council, a stipulation included that the PUD final plan "shall clearly delineate all approved trails on the site. The trails shall be located within 15 foot wide public access easements." These documents make clear that the dedication was for a broad 15 foot public access easement.

¶7        CC&R's were finalized in September 1998 and recorded in October 1998 and reference the recorded Plat. Article 5 ("EASEMENTS") addressed various easements on the property. Deferring to the easement designations in the Final Plat, Section 5.13 of the CC&Rs stated:

> Certain parts of Lots are designated on the Plat as a fifteen foot (15') equestrian trail and public access easement or a fifteen foot (15') equestrian trail. Easements are hereby created in favor of the public over, upon and across all such easement areas for the riding and walking of horses and for pedestrian access and hiking.

This language (referencing "equestrian trail" alone) differed from the recorded page of the Final Plat showing Fiflis' property and easement, which does not refer to the easement as "equestrian trail" alone. The CC&R's required that any new easements be approved by the Architectural Committee. The CC&Rs also allowed for amendment "at any time with written approval or the affirmative vote, or any combination thereof, of Owners of not less than seventy-five percent (75%) of the Lots." The CC&Rs provide that, "[i]n the absence of any adjudication to the contrary . . . , the [HOA's] construction or interpretation of the provisions hereof shall be final, conclusive and binding as to all persons and property benefited or bound by this Declaration."

¶8        As noted above, bicycles were using the trails in CRE before the Final Plat was approved in February 1998. And Fiflis admits that, since at least 2010, bicycle races have run through the CRE trails. In 2011, Fiflis purchased Lot 36, which was (and remains) undeveloped. The Sheiners own Lot 37, which borders Lot 36.[1] Fiflis then complained to the Town that the trail easement on Lot 36 did not align with what was shown on the Final Plat. Although the Town agreed, after years of intermittent efforts, Fiflis and the Town were unable to resolve the issue.

¶9        In 2016, the Town, the HOA and the Sheiners agreed to a public access trail easement encumbering the Sheiners' property (Lot 37) and allowing non-motorized uses (the Sheiner Agreement). After approval of the Sheiner Agreement, a new trail was completed on Lot 37, the

---

[1] Stating the Sheiners' transferred Lot 37 in 2022, Fiflis moved to substitute or add the transferees as parties. There is, however, no indication that motion was served on the transferees it seeks to join as parties. The motion is therefore denied.

easement on Fiflis' property (Lot 36) was abandoned and Fiflis' property was revegetated to make the former trail inaccessible. As a result, the public access trail easement now is on Lot 37, along the border with Lot 36; none of it is on Fiflis' property. In 2018, more than 75 percent of the lot owners approved an amendment to Section 5.13 of the CC&Rs. That amendment, which was recorded after being approved, clarifies that permissible uses on the trails for the public easements in the Plat include "the riding and walking of horses, pedestrian access, hiking, and non-motorized vehicle access, (including, but not limited to, bicycle access)."

¶10 In February 2019, Fiflis filed this action. As to the HOA, Fiflis sought a declaration that the 2018 CC&R amendment was void, any trail use was limited to walking and riding horses and an injunction against any further amendments to allow any other uses. As to the Sheiners and the Town, Fiflis sought a declaration that the Sheiner Agreement was void and that, by allowing bicycles to use the public easements, the Town was trespassing. Fiflis also sought an injunction against continuing harassment, and claimed an unconstitutional taking.

¶11 Fiflis moved for partial summary judgment on the 2018 CC&R amendment and permitted trail uses. Fiflis argued bicycles exceeded the permitted uses and, citing *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42 (App. 2010), that the CC&R amendment "add[ed] new and different burdens" by "greatly expand[ing] the permitted uses of the owners' property by the public." The Town moved for summary judgment on the trespass and taking claims. At oral argument, the superior court stated that the Final Plat and the CC&R's had to be interpreted together and, in its view, "what the CC&R's did was narrow the scope . . . of what [the] easement [could] be used for." The court then entered summary judgment for Fiflis and did not address the Town's motion on the issues of trespass and taking. Fiflis then moved for partial summary judgment on the validity of the Sheiner Agreement, trespass and unconstitutional taking. After oral argument, the court found the Sheiner Agreement violated the CC&R's and the easement grant, rejecting Fiflis' other claims.

¶12 After entry of final judgment, Ariz. R. Civ. P. (Rule) 54(c) (2023),[2] defendants timely filed a notice of appeal and Fiflis filed a notice of cross-appeal. This court has appellate jurisdiction under Article 6, Section

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

**¶13**        Defendants argue the superior court erred by (1) concluding bicycles were not a permitted use in the public access easements granted in the Final Plat; (2) invalidating the 2018 CC&R amendment; (3) invalidating the Sheiner Agreement and (4) failing to reject all of Fiflis' claims against the Town. Defendants also argue that Fiflis did not timely file his cross-appeal. Fiflis argues the superior court erred in rejecting the trespass and taking claims and not granting his request for injunctive relief. The court addresses these arguments in turn.

**¶14**        This court reviews de novo a grant of summary judgment, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). When uncontroverted, "facts alleged by affidavits attached to a motion for summary judgment may be considered true." *Portonova v. Wilkinson*, 128 Ariz. 501, 503 (1981).

**I.        The Easements Were Not Limited to Pedestrians and Riding Horses.**

**¶15**        "An easement is a right which one person has to use the land of another for a specific purpose." *Etz v. Mamerow*, 72 Ariz. 228, 231 (1951). As with other servitudes, easements "should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." *Powell v. Washburn*, 211 Ariz. 553, 557 ¶ 13 (2006) (citation omitted). "Principles of contract interpretation apply to easements." *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 66 ¶ 16 (App. 2011).

**¶16**        As noted above, the page of the Final Plat containing Fiflis' lot addressing the easement contains a Legend stating "15' EQUESTRIAN TRAIL & PUBLIC ACCESS ESMT," with one reference on the map stating "NOTE: DIMENSIONS ARE TO CENTERLINE OF TRAIL EASEMENT." Neither party disputes that the easement on Lot 36 allows for both equestrian and pedestrian use. The plain language of the Final Plat grants a broad public access trail easement. Moreover, to the extent there is ambiguity in the Final Plat, the "circumstances surrounding [the] creation

of the servitude," *Powell*, 211 Ariz. at 557 ¶ 13, show that, as accepted, the Final Plat included public access easements reflecting then-current uses. Defendants presented evidence that, historically, those uses included bicycles along with pedestrian and equestrian uses. Fiflis did not dispute that evidence. On this record, the public access easements granted in the Final Plat as accepted by the Town in 1998 included bicycle use.

**¶17** Reflecting this pre-existing bicycle use, nowhere in the Final Plat, the Narrative Report or the Town Council stipulations or minutes is there any suggestion that the use of bicycles was precluded. Although Fiflis presented evidence from a former Town Mayor that "the Town Council's intent" was otherwise, no such limitation was stated in the documents and one person cannot testify about the intention of the council as a whole. *See Long v. City of Glendale*, 208 Ariz. 319, 331 ¶ 42 (App. 2004) (disregarding a single city councilman's testimony about the council's intention for the use of property). Moreover, because the Final Plat and related documents did not preclude the use of bicycles, a former Town official's undisclosed intent relayed more than two decades later is not relevant. *Cf. Hill-Shafer P'ship v. Chilson Fam. Tr.*, 165 Ariz. 469, 474 (1990) ("What is operative is the objective manifestations of assent by the parties."); *Hartford v. Indus. Comm'n. of Ariz.*, 178 Ariz. 106, 112 (1994) ("Mutual assent is based on objective evidence, not on the hidden intent of the parties.").

**¶18** Given this pre-existing public use of bicycles on the trails when the Final Plat was approved, the public access easements were not limited to pedestrians and riding horses. Thus, Fiflis has not shown that bicycles using the public access easements exceeded the grant or any impermissible interference with his use of Lot 36.[3]

## II. The 2018 CC&R Amendment Properly Clarified Uses Allowed on the Public Access Easements in the Final Plat.

**¶19** Fiflis argues that the 2018 amendment to the CC&Rs was invalid because the CC&Rs as they existed before that amendment limited the scope of the public access easements in the Final Plat. Not so. The express public access easement in the Final Plat defined the scope of the trail easements in a grant that was accepted by the Town for the benefit of the public. *See Scalia v. Green*, 229 Ariz. 100, 102 ¶ 7 (App. 2011) ("An express

---

[3] At oral argument and in the answering brief, Fiflis has raised various hypotheticals of motorized uses of the public access easements. Because those issues are not part of this case, this court need not (and expressly does not) address them.

grant of an easement defines the grantee's rights."). By contrast, "CC & Rs constitute a contract between the subdivision's property owners as a whole and individual lot owners." *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634 ¶ 5 (App. 2000). Fiflis has not shown how the later enacted CC&R's, to the extent they sought to limit use granted in the Final Plat, would be binding on the public or could limit the public easements. To the contrary, "a dedication, once perfected, is irrevocable," *City of Chandler v. Ariz. Dep't of Transp.*, 224 Ariz. 400, 403 ¶ 9 (App. 2010), and a grant of a public access easement reflected in the Final Plat could not be restricted in later-enacted CC&R's.

¶20        The factual predicate for Fiflis' argument -- that the original CC&Rs limited the Final Plat -- is wrong. The CC&Rs contain no language limiting the uses to only walking and horse riding. Additionally, the CC&Rs make plain that absent any judicial determination otherwise, the HOA's "construction or interpretation of the provisions hereof shall be . . . conclusive and binding as to all persons and property benefited or bound by this Declaration." In amending the CC&R's, the HOA clarified that the scope of the public access easements included bicycles. Fiflis has not shown how that clarification, which was properly adopted by more than 75 percent of the owners, was invalid.

¶21        The superior court found that the 2018 CC&R amendment clarifying the scope of the easements impermissibly imposed an "additional burden" by "expand[ing] the scope of the CC&Rs," contrary to *Dreamland*, 224 Ariz. at 42. As discussed above, the 2018 CC&R amendment clarified the scope of the public access easements; it did not expand their scope or the scope of the CC&Rs as they existed before that amendment. Nor does *Dreamland* invalidate the 2018 CC&R amendment.

¶22        *Dreamland* involved a community with 18 sections, each containing several residential lots. *Id.* at 43 ¶ 2. Seventeen of those 18 sections had no annual assessments and no common areas, with owners having the option of being members in a voluntary club. *Id.* at 43 ¶ 4. More than 40 years after the first section was built, the community proposed an amendment to the CC&Rs requiring each section to pay an annual assessment for club maintenance. *Id.* at 44 ¶ 6. On appeal, the court concluded "[i]t is not reasonable to use the amendment provision to direct that one group of lot owners may, in effect, take the property of another group in order to fund activities that do not universally benefit each homeowner's property or areas owned in common by all." *Id.* at 51 ¶ 36. No such issue is presented here, where the 2018 CC&R amendment sought to clarify the scope of the public access easements in the Final Plat. *See also*

*Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532, 537 ¶ 10, 539-42 ¶¶ 17, 22-41 (2022) (applying *Dreamland* in invalidating CC&R amendments imposing use and improvement restrictions *but affirming* CC&R amendments clarifying definition of "garage;" noting CC&R amendments "must give sufficient notice of the possibility of a future amendment; that is, amendments must be reasonable and foreseeable").

**¶23** Unlike *Dreamland* or *Kalway*, here, the public access easements were established in 1998 when the Final Plat was approved, before the version of the CC&Rs Fiflis argues cannot be changed had been finalized. Fiflis does not contest that he had knowledge of the public access easements in the recorded Final Plat when he purchased Lot 36 in 2011. Moreover, unlike *Dreamland* and *Kalway,* the 2018 CC&R amendment did not add an additional restriction on Fiflis' use of Lot 36. Instead, like the amendment allowed in *Kalway* clarifying the definition of "garage," the 2018 CC&R amendment clarified uses allowed under the existing public access easements.

**¶24** Fiflis also argues that the 2018 CC&R amendment was invalid because it did not comply with A.R.S. § 33-1817(A)(2), which requires consent of all affected homeowners if an amendment applies to less than all the homeowners. However, the amendment here applied to all homeowners. The amendment provided notice to all homeowners of the uses allowed on the easements throughout the community. For all of these reasons, Fiflis has not shown the amendment clarifying the easement use was invalid.

### III.   Fiflis Has Not Shown the Sheiner Agreement Was Invalid.

**¶25** Fiflis argues the HOA could not approve the Sheiner Agreement, claiming it contravenes the description of the public access easements in the CC&Rs. As a result of the Sheiner Agreement, however, Fiflis' property is no longer encumbered by the easement. Fiflis has not shown how the Sheiner Agreement harmed Lot 36 or otherwise is prohibited by the CC&Rs. The Sheiner Agreement also was approved by the Architectural Committee as required by the CC&Rs. Accordingly, the cases Fiflis cites for the proposition that an HOA "cannot act in contravention of the CC&Rs" have no application here. *See Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 320–21 ¶¶ 27–28 (App. 2011); *Wilson v. Playa de Serrano*, 211 Ariz. 511, 513–14 ¶¶ 8–9 (App. 2005). Nor has Fiflis shown the Sheiner Agreement would run counter of the requirement of an "orderly plan of the subdivision," citing *Vill. of Riverside v. Maclean*, 71 N.E. 408, 415 (Ill. 1904), even if that case applied here.

**IV.    Fiflis Timely Filed His Notice of Cross Appeal.**

**¶26**        Defendants argue that Fiflis did not timely appeal. Generally, "a party must file a notice of cross-appeal under [ARCAP] 8 no later than 20 days after appellant's filing of a notice of appeal, or 30 days after entry of the judgment from which the appeal is taken, whichever is later." ARCAP 9(b). Still, the time to file does not begin until a signed written order disposing of, among other things, a motion "to alter or amend the judgment under Rule 59(d)." ARCAP 9(e)(1)(C). Defendants argue that Fiflis' Rule 59(d) motion was really a motion under Rule 54(f)(2)(A) and therefore did not toll the time to file his notice of cross-appeal. However, Rule 54(f)(2)(A) provides the procedure for seeking costs when the judgment "is to be entered under Rule 54(c)" and not after it has been entered. Rule 54(f)(2)(A). The superior court properly considered Fiflis' motion to add costs as a Rule 59(d) motion to amend final judgment and Fiflis filed his notice of appeal 27 days after the superior court entered its amended final judgment. Thus, Fiflis' notice of cross-appeal is timely.

**V.    The Superior Court Did Not Err in Rejecting Fiflis' Continuing Trespass Claim and the Request for Injunctive Relief.**

**¶27**        "[T]o establish a claim of trespass against another, the claimant must possess a legal interest in the land against which the trespass is alleged." *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 268–69 ¶ 22 (App. 2013). With easements, it is the owner of the servient estate that can claim damages and injunctive relief for excessive use of an easement. RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 8.3 cmt b. (2000). Fiflis argues the Town and the Sheiners are committing a continuing trespass by allowing bicycle riders to use the easements. Fiflis' argument fails for two reasons.

**¶28**        First, as noted above, bicycles are included in the scope of the public access easements in the Final Plat. Thus, allowing that use is consistent with the easements. Second, Fiflis has not shown a legal interest in the land burdened by the easements. Citing the RESTATEMENT and cases from other jurisdictions, Fiflis argues that all lot owners in a subdivision are servient owners of the easements. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1; *Tract Dev. Servs., Inc. v. Kepler*, 199 Cal.App.3d 1374, 1384 (1988). The public access easements here, however, do not burden Fiflis' Lot 36. For this same reason, Fiflis' reliance on cases finding an owner can enforce an easement within a subdivision do not apply. *See Grossman v. Hatley*, 21 Ariz. App. 581, 584 (1974); *Connolly v. Robertson*, 567 S.E.2d 193, 196–97 (N.C. App. 2002). Fiflis also argues that he had a legal interest in the

land because an easement used to be on his property. However, Fiflis asserts a continuing trespass claim, and the easement was removed from Lot 36 before this case was filed. Nor has Fiflis shown that *Brenteson Wholesale, Inc. v. Ariz. Pub. Serv. Co.*, which allowed an injunction against use of a neighboring property, would apply. 166 Ariz. 519, 524 (App. 1990). *Brenteson* affirmed an injunction that prevented the possibility of a trespass on the plaintiff's property, which is not what Fiflis asserts here. *See id.*

## VI.  Fiflis Has Not Shown the Town Committed an Unconstitutional Taking of His Property.

¶29        "Arizona law has only recognized a 'taking' of property where the government either assumes actual possession of the property or places a legal restraint upon the property that substantially diminishes or destroys the owner's right to, and use and enjoyment of, the property." *State v. Mabery Ranch, Co., L.L.C.*, 216 Ariz. 233, 242 ¶ 35 (App. 2007) (citation omitted). As explained above, because bicycles are within the scope of the easement grant, the Town has not illegally appropriated easement rights. As also explained above, Fiflis has not shown that he has a legal interest in property encumbered by an easement. Citing *Nollan v. California Coastal Comm'n*, Fiflis argues that the court could declare an unconstitutional taking under the "physical occupation" rule where the government mandates an easement. 483 U.S. 825, 832 (1987). Here, however, the final plat was accepted in 1998, long before Fiflis purchased Lot 36 in 2011. And Fiflis has not shown that the Town mandated that Fiflis grant an easement on Lot 36.

## CONCLUSION

¶30        The judgment rejecting Fiflis' claims is affirmed; the grant of summary judgment limiting the public access easements to walking and riding horses is vacated, and this matter is remanded with instructions to enter judgment consistent with this decision. The HOA and Sheiners request their fees under A.R.S. § 12-341.01. In its discretion, the court grants the request and awards the HOA and the Sheiners their reasonable attorneys' fees and taxable costs contingent upon their compliance with ARCAP 21.